Charles JONAS, et al., Plaintiffs,

v.

Dr. Douglas CONRATH,
et al., Defendants.

Civ. A. No. 6:92–1065.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

June 24, 1993.

Keith White, Bryant & White, St. Marys, WV, for plaintiffs.

Paul T. Theisen, Theisen, Brock, Frye, Erb & Leeper, Marietta, OH, for Dr. Conrath and Vision Care.

J. Rudy Martin, Jackson & Kelly, Charleston, WV, for Prudential.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Prudential Insurance Company of America's (Prudential's) motion for summary judgment and motion to sever. For reasons discussed herein, the Court **DENIES** these motions.

### I. FACTUAL BACKGROUND

The facts of this case are in dispute. The Court, however, will attempt a summary of the factual disputes presented. Plaintiffs' claim against Prudential sounds in contract. The claim asserted against Dr. Conrath and Vision Care Associates, Inc. (Vision Care), and which is not in issue currently, is grounded in tort.

Prudential provides healthcare coverage to Mr. Jonas. On or about October 13, 1990, after at least two months of vision problems, Mr. Jonas consulted Dr. Conrath, an optometrist. On October 17, Dr. Conrath recommended Mr. Jonas consult a neurologist.[1] On or about November 12, Dr. Conrath referred Mr. Jonas to a neurologist, Dr. Morehead. This physician examined Mr. Jonas in mid-November. According to Plaintiffs, neither doctor diagnosed Mr. Jonas with a detached retina and neither treated him after November 1990.[2]

Mr. Jonas was referred to Dr. Wanchik, an opthamologist, in December or January of 1991.[3] Dr. Wanchik diagnosed Mr. Jonas as suffering from a detached retina. Mr. Jonas was treated with a series of surgical procedures. Plaintiffs filed a claim for the surgical expenses with Prudential. Prudential denied the claim in May 1991 relying upon the following exclusion in the Jonas' policy:

> Pre-existing Conditions—Any charges, in connection with an illness made before the earlier of (a) the date you have been insured under this Coverage for one year, and (b) the end of a period of [180] consecutive days during which there are no medical expenses in connection with the illness. This exclusion only applies to illnesses that

---

1. Defendant Conrath asserts he also directed Plaintiff Jonas to consult with a retinal specialist. Plaintiffs vigorously dispute this assertion.

2. There is evidence that Plaintiffs were concerned about whether their insurance would cover certain medical expenses prior to the December 1, 1990 effective date. *See, e.g.,* Affidav. of Dr. Douglas L. Conrath ¶ 4 (stating "Ms. Jonas called my office and asked that I wait until December, 1990 before referring her husband to any doctors because their insurance coverage would not become effective until after December, 1990").

3. There is a dispute in the record as to whether Dr. Morehead or Plaintiffs' neighbor referred Mr. Jonas to Dr. Wanchik.

require medical expenses during the [180] day period immediately before you become insured.

## II. MOTION FOR SUMMARY JUDGMENT

Prudential asserts Mr. Jonas' medical expenses fall under the pre-existing condition exclusion. Prudential would have the Court characterize Mr. Jonas' "illness" as a "vision loss condition." Def.'s Mot. for Sum.Jgt. *passim*. In effect, Prudential asks the Court to conclude that since Mr. Jonas received treatment for eye problems prior to December 1, 1990, that the pre-existing condition exclusion bars recovery for what may or may not be related eye problems, the detached retina, which was diagnosed after December 1, 1990.

■ Plaintiffs, however, draw a distinction between Mr. Jonas' "vision loss condition" prior to December 1, 1990, and the treatment he received thereafter.[4] While not specifically framed as such by the parties, this dispute revolves around the interpretation of the term "illness" in the pre-existing condition exclusion. The parties have not directed the Court to any definition of the term "illness" in the policy.[5]

When reasonable persons may differ about the meaning of an insurance contract, the contract is deemed ambiguous. *D'Annunzio v. Security–Connecticut Life Ins. Co.*, 186 W.Va. 39, 41, 410 S.E.2d 275, 277 (1991). When provisions of an insurance policy are clear and unambiguous, they are not subject to either construction or interpretation. *Ward v. Baker*, 188 W.Va. 569, 575, 425 S.E.2d 245, 251 (1992). When such provisions are deemed ambiguous, however, all ambiguities are to be resolved in favor of the insured. *D'Annunzio*, 186 W.Va. at 41, 410 S.E.2d at 277; *Zurich Ins. Co. v. Uptowner Inns, Inc.*, 740 F.Supp. 404, 407 (S.D.W.Va.), *aff'd*, 904 F.2d 702 (4th Cir.1990).

The Court concludes that reasonable persons may differ as to the parameters of the term "illness." Indeed, the parties have both offered reasonable constructions of the term. The term is therefore ambiguous. Accordingly, at this juncture, the Court must resolve all ambiguities in favor of Plaintiffs.

■ In adopting Plaintiffs' construction of the term "illness," the essential question to be determined is whether Mr. Jonas' "illness" or detached retina occurred before or after December 1, 1990. This question presents a genuine issue of material fact and precludes Prudential's request for judgment as a matter of law. Accordingly, the Court **DENIES** Prudential's motion for summary judgment.

## III. MOTION TO SEVER

Prudential also has moved pursuant to *Rule* 21, Federal Rules of Civil Procedure, to sever the claim against it from the claim asserted against Dr. Conrath and Vision Care.[6] While not expressed as such, Pruden-

---

**4.** Plaintiffs note almost three months passed between Mr. Jonas' treatment by Dr. Conrath and Dr. Wanchik's diagnosis of a detached retina. Plaintiffs also offer a letter from the Cincinnati Insurance Company, Dr. Conrath's malpractice insurer. Obviously self-serving, the letter nevertheless states "[Mr. Jonas'] torn and detached retinal of the left eye was not a pre-existing condition prior to February 1, 1991." Pls.' Exhib. E.

**5.** The Court would have preferred to examine the entire contract. As the parties did not furnish a complete copy, the Court is left to interpret little more than the provision itself.

**6.** Prudential's motion states "[f]ederal ERISA law controls the claim against Prudential." Def.'s Mot. to Sever at 6. Plaintiffs disagree and counter that aside from this "bold assertion" there has been no showing ERISA controls. Pls.' Resp. at 7. The Court notes, however, Plaintiffs' failure to file a timely motion to remand. Prudential attempts to remedy the parties' disagreement on this issue in its reply brief:

> [Plaintiffs'] claim against Prudential claims a right that arises under 29 U.S.C. §§ 1001–1461 [of ERISA] because Charles Jonas obtained insurance coverage from Prudential through his employer.

Def.'s Reply at 4.

Prudential fails to support its assertion with either caselaw or specific statutory authority. Prudential's notice of removal on federal question grounds is also framed very generally.

The Court lacks detailed information about the plan in question and declines to speculate as to whether the claim against Prudential is preempted or controlled by ERISA. As diversity appears to be lacking among the parties, the question of

tial argues that the claim against it was misjoined with the claim against the other Defendants.

■ A district court possesses broad discretion in ruling on a requested severance under *Rule* 21.[7] *Hohlbein v. Heritage Mut. Ins. Co.,* 106 F.R.D. 73, 78 (E.D.Wis.1985); 7 Wright, Miller & Kane, *Federal Practice and Procedure* §§ 1689 (2nd ed. 1986). While *Rule* 21 is silent on the standard applicable for determining misjoinder, "courts have uniformly held that 'parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a).' "[8] *See, e.g., Brereton v. Communications Satellite Corp.,* 116 F.R.D. 162, 163 (D.D.C.1987); *Gruening v. Sucic,* 89 F.R.D. 573, 574 (E.D.Pa.1981); Wright, Miller & Kane, *supra,* §§ 1683, 1689.

■ Thus, misjoinder is present, and severance appropriate, when "the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact." Wright, Miller & Kane, *supra,* § 1683; Fed.R.Civ.P. 20(a). Rule 20(a) permits 'the broadest possible scope of action consistent with fairness to the parties [and] joinder of claims, parties and remedies is strongly encouraged.' " *King v. Ralston Purina Co.,* 97 F.R.D. 477, 479 (W.D.N.C. 1983) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *cf. Rumbaugh v. Winifrede R.R. Co.,* 331 F.2d 530, 537 (4th Cir.1964) (stating the foundation of *Rule* 20(a) lies in "avoiding a multiplicity of suits and expediting the final determination of litigation").

The court notes "the transaction and common question requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy." *Ralston Purina,* 97 F.R.D. at 479–80. The Court is also required to construe *Rule* 20(a) in a manner that will "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1.

■ With these standards in mind, the Court looks first to whether the claims against the Defendants arise out of the same transaction or occurrence or series of transactions or occurrences. While the detached retina may or may not have occurred prior to December 1, 1990, the Court treats the claims against all Defendants as resulting from a systematic pattern of events beginning with Mr. Jonas' first vision problems in mid-to late–1990. This pattern culminated in the operations performed on Mr. Jonas' eye.

As to the common question of fact or law, the date on which the trier of fact determines that Mr. Jonas first suffered from a detached retina will be of critical importance in determining Defendants' liability, if any. For instance, if it is determined the retina was detached prior to December 1, 1990, Prudential likely would escape liability under the pre-existing condition exclusion while Dr. Conrath likely would be liable for medical negligence. Conversely, if the detached retina is determined to have occurred after December 1, 1990, Dr. Conrath likely would escape liability and Prudential successfully could not defend by reliance on its pre-existing condition exclusion.

The Court's notes the liberal interpretation it must give to the *Rule* 20(a) standard, as well as the trend toward encouraging the joinder of claims, parties, and remedies. Denying the motion to sever will serve judicial

ERISA's applicability will likely be dispositive of the Court's jurisdiction over this action. The parties should, therefore, comprehensively brief the issue of ERISA's applicability and Plaintiffs' right, if any, to a jury trial within the time remaining for filing of summary judgment and dispositive motions.

7. *Rule* 21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

8. *Rule* 20(a) provides, in part, as follows:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and if any question of law or fact common to all defendants will arise in the action.*

economy and promote the just, speedy and inexpensive determination of this action.[9] For these reasons, the Court concludes the claims against Defendants arise out of the same series of transactions or occurrences and involve at least one common question of fact. Accordingly, Prudential's motion to sever is **DENIED.**[10]

The Clerk is directed to send a copy of this Order to counsel of record.

9. For instance, it is understood that "severed claims become entirely independent actions" following severance. *McDaniel v. Anheuser–Busch, Inc.,* 987 F.2d 298, 304 n. 19 (5th Cir.1993) (citing 9 Wright and Miller, Federal Practice and Procedure: § 2387 (1971)). While not definitively deciding the issue, the Court notes it must have independent subject matter jurisdiction over *each* severed claim. *See* 3A Moore, *Moore's Federal Practice* § 21.05[2] (2nd ed. 1993).

Prudential asserts the claim against it is controlled by ERISA and that it removed this action pursuant to 28 U.S.C. § 1441(b). *See* Notice of Removal at 3. Again, the Court does not address, and awaits briefing on, whether the claim against Prudential is controlled by ERISA. Facially, there does not appear to be diversity jurisdiction between Plaintiffs, Dr. Conrath, and Vision Care. *See* Notice of Removal at 2–3. Assuming federal question jurisdiction is appropriate as to Prudential, the parties seemingly agree the state law claims against Dr. Conrath and Vision Care fall within the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). If the claims against Prudential and the other Defendants are severed, supplemental jurisdiction would evapo-

rate and an independent jurisdictional basis for the state law claims against Dr. Conrath and Vision Care would be lacking. This would require remand to the state court, result in a multiplicity of lawsuits, delay the trial of part of this action, and increase the litigation costs of the parties. Even if the Court could retain jurisdiction over the two separate actions, the same evidence as to when the retina became detached likely would have to be repeated for both trials. *See* Pls.' Mem. in Oppos. at 6. This would counter both common-sense notions of efficiency and judicial economy.

10. Prudential asserts the Court should follow the decision in *Gruening v. Sucic* 89 F.R.D. 573 (E.D.Pa.1981). In *Gruening,* the Court severed a malicious breach of fiduciary relationship action against an insurer from a negligence claim against a driver. *Id.* at 575. The facts of *Gruening* are distinguishable in many respects. Foremost among these facts is that the failure by the court to sever those two actions would have allowed the jury to learn the putatively negligent Defendants were insured. *Id.* at 574. That highly prejudicial scenario is absent from the instant case.